112 So.2d 336

Monford STEELE et ux.

v.

Ida S. McCURDY et al.

7 Div. 342.

Supreme Court of Alabama.

April 9, 1959.

Rehearing Denied May 28, 1959.

Scott, Dawson & Scott, Fort Payne, for appellants.

W. M. Beck, Fort Payne, for appellees.

COLEMAN, Justice.

E. A. McCurdy, in 1951, brought an action at law against Monford Steele, to recover possession of a certain tract of land in DeKalb County, together with damages for the detention thereof. In 1952, McCurdy filed a petition to remove the cause to equity. Steele filed two separate demurrers to the petition for removal, but we do not find in the record any ruling on these two demurrers. In March, 1952, an order was entered transferring the cause to equity, and McCurdy filed a bill of complaint to establish a disputed boundary line between the adjoining lands of the parties.

Assignments of Error 1 and 2 are to the effect that the court erred in making

the transfer order, but these assignments are not argued in brief and for that reason are waived. "Assignments of error not substantially argued in brief will be deemed waived and will not be considered by the court." Rule 9, Revised Rules of Practice in the Supreme Court, 261 Ala. XXII, XXIII; 1940 Code, Title 7, Appendix, Pocket Parts.

Steele's demurrer to the bill of complaint was overruled, and on appeal this court affirmed. Steele v. McCurdy, 258 Ala. 558, 63 So.2d 704.

In June, 1953, Steele answered the bill of complaint and denied that he was the owner or in possession of the land alleged in the bill to be owned and possessed by him, and averred that his wife was the owner of and was in possession of said land at the time the original suit in ejectment was brought.

Testimony was taken before the register in July, 1953, and January, 1954. In February, 1954, McCurdy amended the bill of complaint to make Mrs. Monford Steele, wife of original respondent, a party respondent also. In June, 1954, complainant further amended the bill and added a prayer for damages and an injunction.

The respondent husband moved to strike the February, 1954, amendment to the bill and the respondents, husband and wife, separately demurred to the bill as amended in June, 1954.

In September, 1954, the court denied the motion to strike and overruled the demurrers, and the respondents separately answered the amended bill. By her answer the wife "objects" to the transfer to equity, and both respondents say that the land in dispute was conveyed to the wife by the husband on October 17, 1950, and so far as the wife knows, the "husband had a right to so convey said land."

Further testimony was taken in October, 1954, and in December, 1954. The cause was submitted for final decree at the regular call of the Equity Docket on April 11, 1955, on separate notes of testimony by complainant and the husband. On May 9, 1955, the wife refused to submit and objected to submission on the grounds that the major portion of complainant's testimony was taken before she became a party and she had no opportunity to question the transfer to equity, to test sufficiency of pleadings, or to object to testimony of or cross-examine complainant's witnesses.

On July 5, 1955, the court entered an order which recites in pertinent part as follows:

"The record in the above cause shows that on the call of the Equity Docket on April 11, 1955, the above case was 'submitted for final decree', and it does not show that any objection was made to the submission."

The order further noted that the wife, on May 9, 1955, filed her objections to submission, and the court being of opinion that submission should be set aside to allow all parties an opportunity to examine and cross-examine such witnesses as they may desire, did set aside the submission of April 11, 1955.

On November 8, 1955, complainant filed motion to resubmit, and on November 25, 1955, the court ordered the cause set down for final submission on January 10, 1956.

On December 19, 1955, complainant, E. A. McCurdy, died. On petition, his administratrix, widow, and heirs were substituted as complainants and the cause was revived by order made on February 4, 1956.

By further orders of the court, the cause was submitted and decree entered on July 14, 1956, and by separate order entered on that date, the court overruled the objection to submission filed by the wife and to this ruling the wife excepted.

The decree of July 14, 1956, established the boundary line as contended for by complainants, and ordered the surveyor, E. J. Mims, to establish permanent stone or iron markers along the line as established, and

to report his action in accordance with the decree. Mims had previously surveyed the disputed lands, made plats thereof which are in evidence, and testified in the case. He reported to the court pursuant to the decree and no exception was taken to his report.

On October 2, 1956, the court confirmed the surveyor's report and being of opinion that complainants were entitled to compensation for use and occupation of the disputed land and premises, awarded complainants a judgment against respondents for $850.

1. Including parties, twenty-one witnesses testified. Each of fourteen witnesses testified that he had known the property more than twenty years, and more than half of the fourteen testified to knowledge for forty years or more. The testimony was taken before the register and we have reviewed all of it carefully without presumption in favor of the finding below. The trial court located and fixed the boundary along the line from C to M, as shown on respondents' Exhibit 6–1. A simplified sketch showing the essential features of that exhibit appears below.

The appellants claim that the correct line is the line from B to X on the diagram. Tract 4 is the land in controversy. It appears that at some time prior to 1915, the Scott Acre and Woodall Acre had been conveyed (we assume to trustees), for a school, and were collectively known as the "School House Lot;" that in January, 1915, the Odd Fellows Lot on the diagram was also conveyed to trustees for a school. Thereafter, the Scott and Woodall Acres together with the Odd Fellows Lot, were collectively known as the Ider School Lot. The location of the southeast corner of this Ider School Lot (composed of Scott and Woodall Acres together with Odd Fellows Lot), which is also the southwest corner of the Rogers or McCurdy lot, is a disputed question of fact in this case.

Some facts appear to be established without substantial conflict. Among these are the following:

In January, 1924, complainant, E. A. McCurdy, purchased from F. M. York a tract of land described as follows:

"Beginning at the south east corner of the Ider school lot and running north one hundred eighty feet, thence east sixty feet, thence south one hundred eighty feet to Sulphur Springs road thence west with said road to point of beginning. One

fourth acre more or less, a part of the south west fourth of the north east fourth of section three Township four of Range nine east in DeKalb County, Ala."

In the year 1924, E. A. McCurdy built a store building on the lot so purchased, and there operated a store himself until 1935, after which he rented the store to various tenants, some of whom testified in the case. The last tenant was respondent, Monford Steele, who paid rent at the rate of $7 per month until about November 30, 1945. After that time, Steele refused to pay rent, but continued to occupy the store up until the time of the final decree, so far as the record shows.

In August, 1924, E. A. McCurdy bought 9¾ acres adjoining the first tract and described as follows:

"Part of the SW¼ of the SE¼ of section 3, township 4, range 9 east beginning at the NE Corner of school house lot and thence east with line to N. E. corner of said forty thence south to Sulphur Springs road thence west with said road to S. E. corner of school house lot thence north to point of beginning. less ¼ acre in S. W. corner as described in deed to E. A. McCurdy. 9¾ acres more or less in DeKalb Co. Ala."

The 1924 deeds erroneously described the forty-acre subdivision of Section 3 which was intended, and in 1950 the grantors executed a deed correcting the misdescription.

In January, 1915, R. G. Gann and his wife executed what appears to be a deed to G. M. Little, J. R. Stallings, and J. P. Hansard, conveying, as best we can ascertain from the original deed which is before us:

"the following described real estate, situated in the County of DeKalb and State of Alabama, to-wit: Commencing at R. S. Rogers Lot thence West with Sulphur Springs Road to Caperton Road thence with Caperton Road to School House Line to the South East Corner of Said Lot about one third of an acre in S 3, Township 4, R. 9 East this Deed made to the trustees of Public Schools of District of No. 7, DeKalb County, Alabama and their Successors."

On November 30, 1945, the DeKalb County Board of Education executed to respondent, Monford Steele, a deed conveying to him, "all the right, title, claim and interest" which said Board of Education holds or owns in and to a lot described substantially the same as in the 1915 deed to the school trustees.

On October 17, 1950, Monford Steele executed to his wife, the respondent, Mrs. Merle Steele, a quitclaim deed conveying real estate described as follows:

"Beginning at a point where the south line of the Ider School lot crosses Valley Head and Stevenson road; thence south along the center line of road to a point where it intersects the center line of the Sulphur Springs road; thence eastward with the center line of said Sulphur Springs road to a point where the west line of E. A. McCurdy's property intersects said Sulphur Springs road, as surveyed by E. J. Mims, County Surveyor of DeKalb County, Alabama; thence north 0 degrees 8' west along the west line of E. A. McCurdy's property 170 ft.; thence south 89 degrees 3' west 240 ft.; thence south 89 degrees 3' west 77 ft. to point of beginning, said land lying in Section 3, Township 4, Range 9 DeKalb County, Alabama and containing 0.75 acres, more or less, being the same land purchased by me from The County Board of Education, Nov. 30, 1945, Deed Book, 102 Page 239, and known as the Oddfellows Lot or L. O. O. F. Lot in Beat 19.

"situated in DeKalb County, Alabama."

The disputed line is the east boundary of the Steele land, which line is also the west

boundary of the McCurdy land. The January, 1924, deed to McCurdy describes his west line as: "Beginning at the south east corner of the Ider school lot and running north one hundred eightly feet." The August, 1924, deed locates McCurdy's west line as from "S. E. corner of school house lot thence north to point of beginning." The description in the 1950 correction deed also specifies McCurdy's west line as nothing more definite than the east line of the school property.

The 1915 deed to Little, et als., trustees, merely locates the lot therein described as running west from the "R. S. Rogers Lot," and locates the east line of the Odd Fellows or Steele lot as nothing more definite than the west line of the Rogers or McCurdy lot. The deeds of McCurdy's predecessors in title, from McGuire to F. M. York, and from R. S. Rogers to McGuire, are in evidence, but those instruments merely locate McCurdy's west line as the east line of the School lot and shed no light on the definite location of that line.

Thus it appears, so far as the records show, that the correct boundary can be determined only from testimony as to where the line was located and marked on the ground. That testimony is in irreconcilable conflict. Witnesses for complainants testified that the line had been marked many years ago by a wood fence, later replaced by a wire fence, west of the store building, while witnesses for respondents testified that the old wood fence had been located east of the store.

No useful purpose would be accomplished by undertaking to set out all the evidence on this point. We adopt, as a concise summary of the weight of the evidence, the following statement found in the decree of July 14, 1956, to wit:

"A number of witnesses who at various times had served as school trustees for the Ider School, including John W. Bowman, Dr. W. S. Hansard, J. W. Kilgore, and O. B. Beaty, (a witness for the Respondent) testified that the tract of land represented on Respondent's Exhibit No. 6-1 as Tract No. 4, and the corners of which are designated as C, M, X, and B, on said plat, and on which the store building is located, was never a part of the school property.

"The preponderance of the testimony is to the effect that when Mr. E. A. McCurdy bought the one-fourth acre tract of land on which the store building is now located from Mr. F. M. York, in August, 1924, that Mr. York staked off the land, and that Mr. McCurdy shortly thereafter, and in the same year, erected a store building about ten or twelve feet from the west line of the tract, and that no question was ever raised as to the ownership by Mr. McCurdy from that time until some time in 1945,—a period of more than twenty years."

After giving full consideration to all the evidence, we are of opinion that the trial court correctly established the disputed boundary line.

2. Appellants argue that: "Adverse possession does not run against the public," that the store lot was originally part of the lot conveyed by R. G. Gann and wife to the school trustees, and, therefore, the decree appealed from is in error because it established the line based on a finding that McCurdy had acquired the store lot by holding adversely against the trustees, or against the public for whom the trustees held title.

Conceding arguendo that the proposition of law asserted by appellants is correct and would apply if the store lot had been a part of the lot conveyed to the trustees, the stated proposition has no operation in this case because the weight of the evidence is to the effect that the store lot was never a part of the school lot and McCurdy did not acquire title to the store lot by adverse possession but acquired by conveyance from F. M. York.

278

3. There is evidence that some time after the survey in 1946, McCurdy moved a fence back toward the east and placed it near the line AB. Appellees contend that he did so at the request of the school trustees for gratuitous use of land for a ball diamond or other school purpose, in so far as removal along AX is concerned, and that as to line BX, the fence was moved because Monford Steele "got to tearing the fence down" so it would not contain a cow. Appellants contend McCurdy moved the fence in recognition of Steele's title to the store lot.

Under the proposition that: "When one in actual possession without title abandons the actual possession the constructive possession of the owner is immediately restored," appellants argue that McCurdy, by moving the fence, abandoned the store lot, and thereby showed that he had never intended to hold adversely. This argument also, is based on the premise that McCurdy acquired title to the store lot by adverse possession. We have already stated our conclusion that McCurdy did not acquire that title in that manner. Since the premise fails, the conclusion fails also. Moreover, the evidence does not persuade us that the action of moving the fence amounted to an abandonment of McCurdy's claim of title to the store lot.

4. Appellants argue also that the court erred in placing the line 10 feet west of the store because no possession west of the store was shown, and, under the principle that title acquired by adverse possession without color of title cannot extend beyond actual possession, McCurdy could acquire no title to land he did not physically occupy. This argument is based on the same premise that McCurdy acquired by adverse possession and not by grant, and is subject to the same answer as arguments previously referred to. The line established by the court below, and here affirmed, is not based on title acquired by adverse possession.

5. Appellants argue that the court erred in holding Mrs. Steele liable to complainants for any amount of the award of damages. The evidence is undisputed that the husband remained in actual occupancy of the store without paying rent from November 30, 1945, until the date of final decree. The husband's answer to the bill alleges: " * * * that his wife is the owner of and in possession of the lands described in this paragraph of the bill and has been for several years. and was in the possession of the said land at the time the suit was brought * * *." The wife's answer to the amended bill alleges: "3. That the lands in controversy were conveyed to her by her husband on the 17th day of October, 1950 * * *. That so far as she knows her husband had a right to so convey said land."

From the answers and undisputed proof of the husband's occupancy of the store, the only reasonable conclusion is that after the conveyance by the husband to the wife, which both of them admit, the husband occupied the store as agent or tenant of the wife and that his possession was, in legal effect, the possession of the wife.

Appellants contend further, however, that there is no rational basis for holding the wife liable for the entire amount of the damages, and with that contention we agree. The testimony is that the rent last paid by Monford Steele was at the rate of $7 per month, or $84 per year. The time of occupancy without paying rent was several months more than ten years, and the award of $850 appears to be rent for that period of time at the rate testified to. The wife, however, had no connection with the property for the first five of the ten years, so far as the record shows, and there is no basis for holding her liable for those first five years. For this reason, we are of opinion that the decree appealed from should be modified so as to relieve Mrs. Monford Steele from any liability for one-half of the award, and that she should be held liable for only $425.

6. Appellants argue that the court erred in denying the motion to strike the amendment, or in overruling the demurrer thereto, because the amendment worked a complete change of parties when Mrs. Steele was added as respondent. Appellants also argue that the amendment completely changed "the character of the suit."

Appellants cite Eatman v. Nuckols, 251 Ala. 544, 38 So.2d 494, where the court said:

"* * * The mere fact that the amendment is called a substituted bill does not make it a new bill. Rather we look to its substance to see if its purpose is essentially inconsistent with or repugnant to the purposes of the original bill. McGowin v. McGowin, supra [232 Ala. 601, 169 So. 232]. There is no inconsistency or repugnancy unless there is a complete change in parties or a complete change in the cause of action. Citations omitted." 251 Ala. 544, 546, 38 So.2d 494, 496.

We are of opinion the amendment did not work a complete change of parties. We are not to be understood as holding that a suit may be brought against a former owner of land and that later such owner's grantee may be brought in as respondent where the former owner has no possession of or any apparent interest in the disputed land. That is not the case here. Monford Steele was in actual occupancy of the disputed tract at all times from 1945 to final decree. The statute, Title 47, § 3, Code 1940, permits suit " * * * against the owner or person interested in adjoining land, to have the boundary lines established; * * *." Under the facts of this case, Monford Steele had entered on the store lot as tenant of E. A. McCurdy, had in effect ousted McCurdy in 1945, had thereafter remained in actual occupancy, and now insists he acquired title by deed from Board of Education on which conveyance he rests the title now claimed for Mrs. Steele. We think that in these circumstances Monford Steele was "interested in adjoining land," as that phrase is used in the statute. Mrs. Steele claimed under the quitclaim deed from her husband and was certainly a proper, if not a necessary, party to be brought in, and bringing her in did not work a complete change of parties respondent in violation of the rule governing amendments.

7. Neither did the amendment make a complete change in the cause of action. The same boundary line remained in dispute and complainant continued to claim under the same title as in the original bill. The amendment does seek additional relief in damages. This court has said:

"As to those grounds of the demurrer to that phase of the bill claiming damages, appellant's argument is that 'a disputed boundary line cannot be put forward as a pretext for a court of equity to award damages for an alleged trespass,' * * *. On the face of the bill, even construed most strongly against the pleader, it is by no means apparent that the phase of the bill seeking definition of the disputed boundary is not bona fide or is a mere pretext to have the court award damages. We here deal with a bill on demurrer, in which case the averments of the bill are taken as true. Such a contention might be appropriate on appeal from a final decree where the equitable remedy was denied and damages awarded. * * * Under the statute it is comprehended that all matters relating or incident to the suit to establish a disputed boundary may be determined. Code, Title 47, § 3. The general rule is that where a court of equity assumes jurisdiction of a cause, it will retain the bill and do complete justice. * * * We hold, therefore, the bill as to this phase of the case was also well filed." Citations omitted. Comer v. Limbaugh, 256 Ala. 655, 660, 57 So.2d 72, 75.

We do not think the good faith of complainants in suing to settle the boundary dispute can be doubted in the case at bar.

The amendment seeking additional relief in damages was not repugnant to the original bill and did not change the character of the original suit in violation of the rule governing amendments. The court did not err in allowing the amendment.

The propositions urged by appellants do not show reversible error. It is ordered that the decree awarding damages be modified in accordance with this opinion. As so modified, the decrees appealed from are affirmed.

Modified and affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.